For substantially the reasons stated in this letter, by **March 8, 2024**, WSP shall produce merger documents responsive to Iron Mountain's RFP Nos. 47-48, as narrowed in the descriptions of the requests below.  So Ordered.

The Clerk of Court is respectfully directed to close the motion at Dkt. 107.

Dated: February 29, 2024
        New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

**23 Civ. 2858 (LGS)**

Re: *Iron Mountain's Reply in support of Pre-Motion Letter to Compel Production*

---

Dear Judge Schofield:

Pursuant to ECF No. 108, Plaintiff Iron Mountain (Nederland) Data Centre Germany B.V.'s ("Iron Mountain") submits this reply in support of its pre-motion letter (ECF No. 104), which seeks an order compelling Defendant WSP USA Buildings, Inc. ("WSP") to produce non-privileged documents responsive to Iron Mountain's Requests for Production ("RFP") 47 and 48.

## BACKGROUND

In this case, Iron Mountain seeks to recover the substantial costs it incurred for the design and construction of a data center in Frankfurt, Germany (the "Project") that resulted from numerous design delays, errors, and omissions by kW Mission Critical Engineering dpc ("kW"). During the Project, kW merged with WSP.  Now, WSP seeks to shift liability to Third-Party Defendants TTSP and AECOM on the basis that they breached their contracts with kW.

Iron Mountain served RFPs requesting the "merger agreement between kW and WSP" (RFP No. 47), and "all Documents and Communications related to the merger agreement between kW and [WSP] that discuss and/or relate to Iron Mountain or the Project" (RFP No. 48). Despite Iron Mountain narrowing its requests, as shown below, and multiple attempts to reach an agreement, WSP still refuses to produce documents responsive to RFPs No. 47 and 48 as modified.

For **RFP No. 47**, instead of disclosing the entire kW/WSP merger agreement and schedules/exhibits, Iron Mountain proposed during a meet and confer that WSP produce a redacted version of the merger agreement, such that disclosed information is limited to only those provisions or schedules/exhibits in the merger agreement that concern the Project.  By way of examples only, this would include kW's disclosures to WSP about the Project, including the status of kW's work, any indication of potential risks or disputes, a list and description of contracts, and information sufficient to show the assets/liabilities that WSP acquired in relation to kW's contracts with AECOM and TTSP.

**RFP No. 48** was, from the outset, already limited to communications related to the merger agreement that "discuss/and or relate to Iron Mountain or the Project."  However, Iron Mountain

February 26, 2024
Page 2

agreed to further limit this request to: "all Documents and Communications related to the merger agreement between kW and [WSP] that discuss and/or relate to ~~Iron Mountain or~~ the Project."

## LEGAL STANDARD

Parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1). "This obviously broad rule is liberally construed." *Daval Steel Prod. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (ruling relevance is broadly construed "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case"); *Morse/Diesel, Inc. v. Fidelity & Deposit Co.*, 122 F.R.D. 447, 449 (S.D.N.Y. 1988) (noting "reasonably calculated" means "any possibility that the information sought may be relevant")).

## ANALYSIS

As shown below, the kW/WSP merger disclosures and merger-related communications ***concerning the Project*** are plainly relevant and proportional under the broad scope of Rule 26 because kW's design delays, errors, and omissions and project management failures ***led up to and overlapped with*** the timing of the kW/WSP merger.

**A.**     **kW's Agreement with Iron Mountain**

**1.    kW's Contract Deliverables**.  Under the Professional Services Agreement ("Agreement") (ECF No. 30-1), entered in April 2019, kW agreed to provide design services "in accordance with the details and completion times" set forth in the Statement of Work ("SOW") attached to the Agreement. (Agreement, § 1.1.)  Under the SOW, kW agreed to "lead the design team," "provide project management services of all design consultants," and deliver "100% issue for construction (tender) documents" for the Base Build scope.  (SOW, §§ 1, 1(B)(i).)

Because the Project is located in Germany, the design and fee schedules in the SOW specifically established that kW would deliver, and Iron Mountain would pay for, designs in compliance with German design standards established in the *Honorarordnung für Architekten und Ingenieure* ("HOAI"), specifically LP3 and LP5 designs.  (*Id.* at §§ 3–4.)

**2.    kW's Contract Deadlines**.  kW agreed that "***[t]ime shall be of the essence***" for its "performance . . . ***in accordance with the project design schedule agreed to by the parties***." (Agreement, § 17.7 (emphases added).)  The design schedule required kW to deliver the 100% Issue for Construction HOAI-compliant design by October 28, 2019.  (SOW, § 3.)

**B.**     **kW's Performance on the Project**

**1. 2019–2020: kW's Design Delays, Errors, and Omissions.**  Throughout 2019 and 2020, kW's designs were delayed and suffered from numerous errors and omissions, many of which arose out of kW's material failures to lead and manage the design process.  Most notably,

although the Agreement required kW to deliver German HOAI designs and, to that end, "***ensure that [kW] require[d]***" AECOM to "***comply with terms and conditions substantially similar to***" the Agreement (*see* Agreement, § 12.1 (emphases added)), kW failed to enter a substantially similar contract with AECOM, and then allowed AECOM to develop designs under the separate, and incompatible, Royal Institute of British Architects standards.

kW failed to deliver a 100% Issue for Construction design of the Base Build scope by the October 28, 2019 contract deadline. It was not until December 2020—more than a year after missing the contract deadline and ***only weeks before the kW/WSP merger***—that kW finally characterized its design as acceptable for construction. Unfortunately, that design remained critically deficient, and design work continued throughout 2021 and well into 2022.

**2. November 2020: kW Combines Different Design Scopes**. A pivotal moment occurred the ***month before*** the kW/WSP merger became effective. It is standard practice in the data center industry for a design leader to issue ***separate*** designs for each of the Base Build and Tenant design scopes.[1] However, the November 2020 design submission ***combined*** together and failed to ***demarcate*** the separate Base Build and Tenant design scopes, which caused significant disruption and prevented Iron Mountain and the Tenant from approving their respective designs. This caused serious problems for pricing because the Tenant was to pay for its designs, but not the Base Build design. As a result, kW, AECOM, TTSP, and contractors had to redirect their efforts and focus to an extensive (yet avoidable) review process to identify and differentiate the separate design scopes.

**C.    WSP's Arguments Are Unavailing**

WSP refuses to produce documents responsive to RFP Nos. 47–48, arguing that Iron Mountain's claims are unrelated to WSP's acquisition of kW, which "occurred long after most of the relevant events [in] this matter." (ECF No. 107 at 3.) But as shown above, the information Iron Mountain seeks is relevant ***because*** kW's project management failures and design delays, errors, and omissions ***led up to and overlapped with*** the kW/WSP merger and accompanying negotiations. Given this timing, kW's disclosures to WSP about the Project are plainly relevant to Iron Mountain's design delay and deficiency claims and well within the broad scope of Rule 26.

Finally, WSP put the merger agreement and related communications at issue by claiming that AECOM and TTSP are liable for any losses due to breaches of their own contracts with kW. (*See, e.g.*, ECF No. 40 at ¶¶ 48–49, 54–55, 65–66, 71–72.) kW's defense (*i.e.*, attempt to shift liability to AECOM and TTSP) and Iron Mountain's recovery of damages will turn on the terms of kW's contract with TTSP and purported contract with AECOM, and the extent to which WSP acquired the assets and/or liabilities of kW arising under those agreements.

For these reasons, Iron Mountain respectfully requests an order compelling WSP to produce documents responsive to RFP Nos. 47 and 48 as modified.

---

[1] The Base Build scope comprised of two design efforts. Design Effort 1 was the building shell, a penthouse, offices, and three independent data halls (Modules 1, 2, and 3). Design Effort 2 comprised of "interior fit-out" designs for Module 1 and the offices. The design efforts under the SOW did not include interior fit-out designs for either (i) Modules 2 or 3, or (ii) Tenant-specific modifications to the Base Build design of the offices and Module 1.

February 26, 2024
Page 4

        Sincerely,

        <u>/s/ Kyle Maury</u>
        Mike Stenglein*
        Matt Vandenberg*
        Chris Taylor*
        Kyle Maury*
        **KING & SPALDING LLP**
        500 W. 2nd Street, Suite 1800
        Austin, TX 78701
        Telephone: (512) 457-2038
        Facsimile: (512) 457-2100
        Email: mstenglein@kslaw.com
        Email: mvandenberg@kslaw.com
        Email: ctaylor@kslaw.com
        Email: kmaury@kslaw.com

        Richard Marooney
        **KING & SPALDING LLP**
        1185 Avenue of the Americas, 34th Floor
        New York, New York 10036-4003
        Telephone: (212) 556-2100
        Email: rmarooney@kslaw.com

        * Admitted *Pro Hac Vice*

        *Counsel for Plaintiff*
        *Iron Mountain (Nederland) Data Centre*
        *Germany B.V.*

February 26, 2024
Page 5

## CERTIFICATE OF SERVICE

I, Kyle Maury, certify that on February 26, 2024, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which sent electronic notice to all parties of record.

*/s/ Kyle Maury*
Kyle Maury