UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                      :

WSP USA BUILDINGS, INC.,             :

                                       :

                      Third-Party  :        23 Civ. 2858 (LGS)
                      Plaintiff,  :

           -against-           :        **OPINION & ORDER**

                                       :

AECOM LIMITED, AECOM          :
INFRASTRUCTURE & ENVIRONMENT   :
UK LIMITED, and TTSP HWP         :
PLANUNGSGESELLSCHAFT mbH,    :

                                        :

                      Third-Party  :
                      Defendants.  :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

       Defendant and Third-Party Plaintiff WSP USA Buildings, Inc. ("WSP") asserts claims

against Third-Party Defendants AECOM Limited and AECOM Infrastructure & Environment

U.K. Limited (together, "AECOM") and TTSP HWP Planungsgesellschaft mbH ("TTSP"),

alleging breach of contract, "negligence/malpractice" and "indemnity." Third-Party Defendants

TTSP and AECOM each move to dismiss the third-party claims against them under Federal Rule

of Civil Procedure 12(b)(2) for lack of personal jurisdiction. For the following reasons, both

motions are granted.

I.       **BACKGROUND**

       The following facts are taken from the Amended Third-Party Complaint and the record

produced by the parties after conducting jurisdictional discovery. *See Dorchester Fin. Sec., Inc.*

*v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013) (explaining that after discovery, the plaintiff's

prima facie showing of personal jurisdiction must be factually supported).

This action arises from a dispute regarding the design and construction of a data center in Frankfurt am Main, Germany (the "Project"). On April 2, 2019, Iron Mountain, a Netherlands company, and WSP entered a contract in which WSP would be the Project manager. WSP is a New York corporation with its principal place of business in New York. As Project manager, WSP hired TTSP, an architectural and design company located in Germany, and AECOM, an engineering company located in the United Kingdom, to work on the Project.

### A. WSP's Near Retention of AECOM as Engineer

On February 14, 2019, before WSP agreed to be the Project manager, WSP and AECOM began negotiating AECOM's potential role as "Engineer of Record" on the Project. The parties continued negotiating for several months. During their negotiations, the parties agreed that AECOM would begin working on the Project subject to AECOM's standard terms and conditions until a subcontract could be executed. Pursuant to that interim agreement, AECOM began working on the Project and emailing invoices for its services to WSP's New York office. AECOM performed all its services from its office in the United Kingdom and the Project site in Germany and never met with WSP in New York regarding the Project. AECOM and WSP ultimately did not execute a subcontract. AECOM continued working on the Project directly for Iron Mountain.

### B. WSP's Retention of TTSP as Architect

On May 15, 2019, WSP and TTSP entered into a subcontract in which TTSP would serve as the "Architect of Record" for the Project. That subcontract was negotiated and executed in Germany at TTSP's offices. After the subcontract was executed, TTSP conducted all Project work in Germany and uploaded Project deliverables to a cloud-based platform to which both WSP and TTSP had access. TTSP's representatives never visited New York in connection with

the Project, and TTSP sent none of its work product to WSP in New York. TTSP communicated

with WSP via email and sent invoices to WSP's New York office. TTSP and WSP

representatives met in Germany "approximately 10 times" to confer about the Project.

### C. Underlying Action and Third-Party Action

On April 5, 2023, Plaintiff Iron Mountain commenced the underlying action against WSP

alleging breach of contract based on alleged problems with the Project. On June 12, 2023, WSP

filed a Third-Party Complaint against AECOM and TTSP for breach of contract,

"negligence/malpractice" and "indemnity." After AECOM and TTSP stated their intention to

move to dismiss the Amended Third-Party Complaint (the operative third-party complaint) for

lack of personal jurisdiction, the parties were directed to conduct jurisdictional discovery and file

their motions after fact discovery closed.

### II.    STANDARD

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff "bears

the burden of showing that the district court ha[s] personal jurisdiction" over the defendant.

*Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42, 53 (2d Cir. 2021).[1] Where, as here, the parties

have conducted jurisdictional discovery but the court has not held an evidentiary hearing, the

plaintiff must make only a prima facie showing of personal jurisdiction, but that showing must

be supported by the evidence. *See Dorchester*, 722 F.3d at 84-85; *Seiden v. Baker Tilly Hong

Kong Ltd.*, No. 23-1254, 2024 WL 4441582, at *1 (2d Cir. Oct. 8, 2024) (summary order).

Courts "construe the pleadings and affidavits in the light most favorable to [the plaintiff] and

resolve all doubts in its favor." *Nat'l Union Fire Ins. Co. of Pittsburgh v. UPS Supply Chain*

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and
citations are omitted, and all alterations are adopted.

*Sols., Inc.*, 74 F.4th 66, 71 (2d Cir. 2023).  However, courts will not resolve "argumentative inferences in the plaintiff's favor" or "accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013); *accord Bowers v. Grupo Televisa, S.A.B.*, No. 23 Civ. 10870, 2025 WL 579978, at *3 (S.D.N.Y. Feb. 21, 2025).  "To determine whether jurisdiction exists over a non-domiciliary, [courts] first consider whether the state's long-arm statute provides a statutory basis for jurisdiction and, if so, whether exercising personal jurisdiction would comport with due process." *Edwardo v. Roman Cath. Bishop of Providence*, 66 F.4th 69, 73 (2d Cir. 2023).  "In New York, the question of long-arm personal jurisdiction over an out-of-state defendant is governed by N.Y. C.P.L.R. § 302." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 35 (2d Cir. 2010); *accord Madison Stock Transfer, Inc. v. Exlites Holdings Int'l, Inc.*, 368 F. Supp. 3d 460, 480 (E.D.N.Y. 2019).  "In the context of personal jurisdiction, due process demands that each defendant over whom a court exercises jurisdiction have some minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *In re Platinum & Palladium Antitrust Litig.*, 61 F.4th 242, 269 (2d Cir. 2023).

## III.    DISCUSSION

The motions of Third-Party Defendants TTSP and AECOM are granted because the Court lacks personal jurisdiction over both parties.

### A.  Transacting Business Under CPLR § 302(a)(1)

Third-Party Plaintiff WSP asserts personal jurisdiction over both Third-Party Defendants pursuant to the transacting business provision of New York's long-arm statute, CPLR § 302(a)(1).  Section 302(a)(1) states that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state

or contracts anywhere to supply goods or services in the state." Under the statute, "the jurisdictional inquiry is twofold: under the first prong the defendant must have conducted sufficient activities to have transacted business in the state, and under the second prong, the claims must arise from the transactions." *Am. Girl, LLC v. Zembrka*, 118 F.4th 271, 276-77 (2d Cir. 2024), *cert. denied sub nom. Zembrka v. Am. Girl, LLC.*, 145 S. Ct. 1130 (2025).

Under the first prong, "[t]ransacting business under § 302(a)(1) means purposeful activity -- some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 277. The Second Circuit has identified "four non-exclusive factors" courts should consider in determining whether a non-domiciliary transacts business in New York for the purpose of § 302(a)(1) jurisdiction:

> (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires parties to that contract to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

*Rosenblatt v. Coutts & Co. AG*, 750 F. App'x 7, 10 (2d Cir. 2018) (summary order); *accord Reliable Automatic Sprinkler Co. v. Riverside Brass & Aluminum Foundry, Ltd.*, No. 20 Civ. 10220, 2022 WL 142375, at *4 (S.D.N.Y. Jan. 14, 2022). "The totality of the circumstances must be assessed in determining whether a defendant has invoked the benefits and protections of New York's laws." *Rosenblatt*, 750 F. App'x at 10.

Under the second prong, "a claim arises from a particular transaction when there is some articulable nexus between the business transacted and the cause of action sued upon, or when there is a substantial relationship between the transaction and the claim asserted." *Yehuda v.*

*Zuchaer*, No. 22-1972, 2023 WL 8888584, at *2 (2d Cir. Dec. 26, 2023) (summary order). "Although the inquiry under the statute is relatively permissive . . . not every conceivable connection to a New York transaction is substantial enough to confer jurisdiction. An articulable nexus or substantial relationship exists where at least one element of the cause of action arises from the New York contacts." *Id.*

### B. CPLR § 302(a)(1) as Applied to TTSP and AECOM

#### i. Third-Party Defendant TTSP

The Court lacks personal jurisdiction over TTSP because virtually all of TTSP's contacts with New York relating to the Project were a consequence of WSP's location in New York, and not any purposeful effort by TTSP to transact business in New York. WSP has failed to make a "factually supported" prima facie showing that TTSP's conduct as architect for the Project in Germany was sufficient to constitute transacting business in New York. *Dorchester*, 722 F.3d at 85.

TTSP is located in Germany, and WSP is located in New York. The parties negotiated and executed a contract in Germany for TTSP to provide architectural services for the construction of a data center in Germany. The parties' contract includes a representation by TTSP that its work will comply "with all applicable local laws (Germany, Hessen)." TTSP never visited New York in connection with the Project or sent any of its work product to New York. When the parties met in person, WSP travelled to Germany to meet with TTSP. The parties' contract contains a choice of forum and a choice of law provision, neither of which references New York. The former states that "the parties consent to the exclusive jurisdiction of the courts of the Commonwealth of Massachusetts for any action . . . in connection with or arising out of this Agreement," and the latter selects Massachusetts as the applicable source of

law.  The parties' contract also contains a notice provision, requiring notice to be sent to WSP in

New York and TTSP in Germany, the respective locations of each party.  The contract does not

contain any provision requiring parties to send any payments into the State of New York.

Though the contract specifies that TTSP was to e-mail invoices to WSP in New York, it does not

address where payment was to be received by TTSP, a German company.

TTSP's conduct touching New York was thus limited to sending invoices to WSP and

otherwise communicating with WSP electronically.  These limited contacts with New York are

insufficient to support jurisdiction.  *See Reliable Automatic Sprinkler Co.*, 2022 WL 142375, at

*6 (finding no § 302(a)(1) jurisdiction despite a contractual relationship between the parties and

a New York choice-of-law clause where "[d]efendant's only conduct alleged to have occurred in

New York [was] that [d]efendant sent invoices and related correspondence to Plaintiff's New

York office."); *Rosenblatt*, 750 F. App'x at 10 (finding no § 302(a)(1) jurisdiction where parties'

contract was negotiated and executed outside of New York and did not contain a New York

choice-of-law clause, and defendant never entered New York in connection with contract); *cf*.

*State v. Vayu, Inc.*, 206 N.E.3d 1236, 1238 (N.Y. 2023) (concluding that out-of-state defendant's

multiple in-person visits to New York "in furtherance of [] ongoing business relationship" with

plaintiff were "significant" to finding § 302(a)(1) jurisdiction).

WSP argues that "TTSP's contacts with New York" satisfy § 302(a)(1) because TTSP's

communications "demonstrate its intent to engage purposefully in business activities" in New

York.  WSP points to (1) payments TTSP received from WSP from New York, and (2)

"thousands of emails" TTSP sent to WSP in New York about the Project, including business

proposals, invoices, change orders and work authorizations.  First, WSP's payments to TTSP

from New York cannot establish personal jurisdiction because such jurisdiction "must arise out

of contacts that the defendant [it]self creates with the forum State." *Yoomi Babytech, Inc. v. Anvyl, Inc.*, No. 20 Civ. 7933, 2021 WL 4332258, at *8 (S.D.N.Y. Sept. 22, 2021) (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)) (finding no § 302(a)(1) jurisdiction where out-of-state defendant's only contact with New York was its receipt of payments from New York plaintiff).

Second, "[t]elephone calls and correspondence sent into New York, by a non-domiciliary defendant who is outside New York, generally are insufficient to establish personal jurisdiction." *RBC Cap. Markets, LLC v. Garcia Hamilton & Assocs., LP*, No. 19 Civ. 10247, 2021 WL 230194, at *4 (S.D.N.Y. Jan. 22, 2021). This is especially true when the communications do not contain any relevant work product and simply involve "invoices and related e-mails." *Reliable Automatic Sprinkler Co.*, 2022 WL 142375, at *5. Here, WSP's corporate representative testified that TTSP's communications to WSP in New York never included work product and that "[t]he only thing that TTSP did in New York [was] communicate with [WSP]'s office in New York" and "provide invoices" to WSP. WSP's emphasis on the quantity of TTSP's emails does not itself support personal jurisdiction under CPLR § 302(a)(1). *See Paterno v. Laser Spine Inst.*, 23 N.E.3d 988, 994 (N.Y. 2014) ("As we have stated it is not the quantity but the quality of the contacts that matters under our long-arm jurisdiction analysis."); *cf. Koutsoudakis & Iakovou L. Grp. PLLC v. Osman*, No. 22 Civ. 6351, 2023 WL 5232622, at *5 (S.D.N.Y. Aug. 14, 2023) (finding § 302(a)(1) jurisdiction where out-of-state defendant's communications transmitted to New York plaintiff included substantive work product, such as discussion of "case strategies" related to the plaintiff's New York state litigation). Based on WSP's averment of facts supported by jurisdictional discovery, WSP has not sustained its burden of making a prima facie showing

that the court has personal jurisdiction over TTSP under CPLR § 302(a)(1).  TTSP is dismissed for lack of personal jurisdiction.

### ii.  Third-Party Defendant AECOM

The Court likewise lacks personal jurisdiction over AECOM.  WSP has failed to make a factually supported prima facie showing that AECOM transacted business in New York for the purposes of CPLR § 302(a)(1) jurisdiction.  Jurisdictional discovery has shown that the parties do not have an ongoing contractual relationship.  AECOM and WSP negotiated their potential subcontract via email and not in any physical meetings in New York.  That subcontract was never executed.  The parties agreed via email to work together on an interim basis, which they did until AECOM went to work directly for Iron Mountain.  The parties' interim agreement, which governed until any subcontract was executed, incorporated AECOM's standard terms and conditions.  Those terms included a forum selection clause designating England as the exclusive forum for disputes.  Discovery also showed that that all of AECOM's work related to the Project was performed in the United Kingdom or Germany, but never in New York.  Given all of the above, AECOM's contacts with New York are insufficient to constitute "transacting business" here for purposes of § 302(a)(1).  *See Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*, 667 F. Supp. 3d 83, 142 (S.D.N.Y. 2023) (finding no § 302(a)(1) jurisdiction where plaintiffs did not allege "that any of the negotiations regarding contracts between [the parties] occurred in New York, that any such contracts concerned New York, or that [defendant] was ever physically present in New York.").

WSP relies almost entirely on AECOM's out-of-state communications into New York as evidence that "AECOM's conduct constitutes purposeful availment under CPLR § 302(a)(1)."  Those communications include e-mails AECOM sent to WSP containing its business proposal

and negotiating the parties' subcontract, as well as work progress updates and design drawings. WSP also relies on invoices AECOM sent to WSP, and WSP's payments fulfilling those invoices from New York accounts.  Such communications are insufficient to establish § 302(a)(1) jurisdiction over AECOM for the same reasons they are insufficient to establish jurisdiction over TTSP.  *See RBC Cap. Markets, LLC*, 2021 WL 230194, at *4.

WSP also points to "[t]he depth and duration of the business relationship between AECOM and WSP" to argue that AECOM purposefully engaged in business in New York.  In support of this argument, WSP mistakenly relies on *Vayu*.  In *Vayu*, the State University of New York ("SUNY") sued Vayu, a Delaware corporation headquartered in Michigan, alleging that Vayu sold SUNY defective unmanned aerial vehicles ("UAVs"), which malfunctioned.  206 N.E.3d at 1238.  The New York Court of Appeals held that it had personal jurisdiction over Vayu pursuant to CPLR § 302(a)(1) because, throughout a two-year period, Vayu negotiated the UAV sales contract and addressed UAV performance issues through calls, emails and in-person meetings in New York.  *Id.* at 1239.  After the UAVs began malfunctioning post-sale, Vayu sent a representative physically into New York to renegotiate the parties' contract and, in Vayu's words, "figure out a solution and work together."  *Id.* at 1241.

The Court of Appeals held that "[t]he meeting in New York, and the follow up communications, designedly and materially forwarded the negotiation and performance of the contract for the sale of the UAVs" and "demonstrated a clear intent by Vayu to engage purposefully in business activities within the meaning of CPLR 302(a)(1)."  *Id.* at 1239-41.  The court also noted that "the fact that [defendant] traveled to New York . . . in furtherance of the ongoing business relationship is significant," though "being physically present in New York is not required" for § 302(a)(1) jurisdiction.  *Id.* at 1240.

AECOM had much less contact with New York than the defendant in *Vayu*. AECOM never met with WSP in New York about the Project in Germany, and the parties never executed a final agreement due to failed negotiations. These differences make *Vayu* inapplicable here. *See, e.g.*, *Bayshore Cap. Advisors*, 667 F.Supp.3d at 141 (rejecting plaintiffs' reliance on *Vayu* where "[p]laintiffs . . . do not allege that any meetings regarding the contracts with [defendant] occurred in New York nor do they allege that any of the information provided by [defendant] to . . . [p]laintiffs was akin to a modified agreement such that it substantially advanced negotiations").

WSP's reliance on a single email AECOM sent to WSP summarizing a recent subcontract negotiation call between the parties, in which AECOM referenced "the future contracting relationship [the parties] could have" as evidence of AECOM's "intent to further its business relationship" with WSP, is unpersuasive. In the same email, AECOM warned WSP that it "cannot guarantee [the proposed subcontract] will be approved internally," and, as predicted, the parties' continued business relationship on the Project never materialized. The parties' interim contractual relationship did not produce contacts sufficient to constitute AECOM "transacting business" in New York under CPLR § 302(a)(1).

Finally, WSP argues that regardless of whether long-arm jurisdiction under § 302(a)(1) is established, AECOM "should be deemed to have consented to New York's jurisdiction due to its failure to object to the jurisdiction clause proposed by WSP for nearly two years." This argument is incorrect. The record shows that AECOM did object and that there was no meeting of the minds as to the choice of forum clause in the proposed subcontract. In response to WSP's draft contract, AECOM sent its proposed revisions, describing them as "what is required from our side to conclude this Appointment." AECOM's revisions included changing the choice of

forum clause to "exclusively the courts of England." WSP responded "State of New York." "To form a binding contract there must be a meeting of the minds, such that there is a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Stonehill Cap. Mgmt., LLC v. Bank of the W.*, 68 N.E.3d 683, 689 (N.Y. 2016); *accord DoorDash, Inc. v. City of New York*, 692 F. Supp. 3d 268, 297 (S.D.N.Y. 2023). Here, the parties did not agree to all material terms in the proposed subcontract and did not agree to the choice of forum clause. The only contract to which there was mutual assent was the parties' interim agreement, which incorporated AECOM's standard terms and conditions, including a clause designating England as the forum of choice. WSP's argument that AECOM "intentionally fail[ed] to finalize" the subcontract "to avoid the consequences of [the proposed subcontract's] jurisdiction clause" is unconvincing and lacks evidentiary support.

Based on WSP's averment of facts supported by jurisdictional discovery, WSP has not sustained its burden of making a factually supported prima facie showing that the Court has personal jurisdiction over AECOM under CPLR § 302(a)(1). AECOM is dismissed for lack of personal jurisdiction.

## IV.    CONCLUSION

For the foregoing reasons, TTSP's and AECOM's motions to dismiss are **GRANTED**.

Dated: September 9, 2025
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE